IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Isiah James, Jr., #96883, ) | C/A No.: 1:08-2256-TLW-SVH |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Warden, Ridgeland Correctional ) | |
| Institution, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner Isiah James, Jr., filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's motion for summary judgment. [Entry ##41–47]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #48]. Petitioner filed a response in opposition to Respondent's motion. [Entry #50]. Petitioner filed a motion for summary judgment [Entry #51]. Having carefully considered the parties' submissions and the record in this case, the court finds that Respondent's motion for summary judgment should be granted, and Petitioner's motion for summary judgment should be denied.

I.      Procedural Background

On October 25, 1978, Petitioner and a codefendant robbed two victims with a pistol, taking a quantity of marijuana from both men, and then shooting and killing them both.

Petitioner was indicted by Sumter County on two counts of murder and armed robbery, and pleaded guilty on June 18, 1979, to two counts of voluntary manslaughter and one count of armed robbery. The Honorable Dan F. Laney sentenced the Petitioner to thirty years for each count of voluntary manslaughter and twenty-five years for armed robbery, all to be served consecutively, for a total sentence of eighty-five years.

Pursuant to South Carolina law, Petitioner became eligible for parole upon the service of ten years. On February 17, 1988, the Petitioner appeared before the Parole Board and was denied parole. Petitioner has since appeared before the Parole Board nine more times, each time resulting in a denial of parole. Petitioner waived his most recent opportunity to appear before the Parole Board on March 4, 2009.

On March 5, 2003, Petitioner filed a notice of appeal before the Administrative Law Court ("ALC"), arguing that the decision to deny parole was unlawful because it was arbitrary and capricious, and that he is improperly being afforded biannual instead of annual parole hearings. On May 19, 2005, the Honorable Ralph King Anderson II, Administrative Law Judge ("ALJ"), issued an order dismissing Petitioner's appeal and affirming the Respondent's decision to schedule Petitioner's parole hearings biannually. Petitioner appeal the ALJ's decision to the South Carolina Court of Appeals, which denied relief and held that there was no ex post facto violation in subjecting Petitioner to biannual reviews, as it was the law at the time he committed the crime. *James v. South Carolina Dept. of Probation, Parole and Pardon Servs.*, 656 S.E.2d 399 (S.C. App. 2008).

On May 17, 2005, Petitioner filed another notice of appeal before the ALC, challenging the procedures employed by the Parole Board during his March 3, 2005 hearing, in that only five of the seven members of the board were present, which he claims does not constitute a quorum, and that therefore, his rights to due process were violated. On July 16, 2006, the ALC dismissed the appeal based on the lack of subject matter jurisdiction. Petitioner appealed the ALC's ruling to the South Carolina Court of Appeals, which issued an opinion dismissing the appeal and finding that a quorum was present and all five members voted to deny parole. *James v. South Carolina Dept. of Probation, Parole and Pardon Servs.*, 660 S.E.2d 288 (S.C. App. 2008).

This habeas petition followed.

II. Discussion

    A. Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:** Petitioner argues that the failure to allow him to present his case before the full seven member Board is a denial of due process.

**Ground Two:** Petitioner argues that biannual appearances before the board is a violation of ex post facto law.

Although not separately enumerated, Petitioner also argues that the ALC wrongfully granted a dismissal of his appeal and that the March 21, 2001, denial of parole contained reasons that were arbitrary and capricious. For the reasons stated in Ground One and Ground Two, this allegation also fails.

B.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that

the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.    Habeas Corpus Standard of Review

        1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (I) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of

a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[1] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

      b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[2] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing

---

[1] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[2] If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533

(*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

        3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the

novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

D. Analysis

1. Procedurally-Barred Grounds

Procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995). Respondent has not asserted procedural default as to Petitioner's habeas grounds, therefore, a merits review on each is provided below.

2. Merits Review

As an initial matter, it appears the issues raised by Petitioner are not proper claims for habeas review. Petitioner is not making a collateral attack on his sentence that would bring his claim under the PCR Act, but rather, trying to attack a collateral consequence of his sentence. Even if Petitioner were successful on his claims, while it may affect the duration of the sentence, his challenge would not affect the validity of the underlying conviction or sentence. *See Plyer v. South Carolina*, 6:06-3367-DCN, 2007 WL 858870 (D.S.C. Mar. 16,

2007); *Cooper v. State*, 525 S.E.2d 886 (S.C. 2000). Claims regarding sentence-related credits and attacks on the decisions of parole boards are not included in S.C. Code Ann. § 17-27-20(a) and are not proper PCR claims. *Al-Shabazz v. State*, 527 S.E.2d 742, 749 (S.C. 2000) (holding that the PCR process is restricted to collateral attacks challenging the validity of a conviction or sentence, except for two non-collateral matters specifically listed in the PCR Act, and that an inmate may obtain review of the SCDC's final decision in non-collateral or administrative matters under the Administrative Procedures Act in the manner outlined therein).

The Constitution itself does not create a protected liberty interest in the expectation of early release on parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Jago v. Van Curen*, 454 U.S. 14, 18–20 (1981) (finding mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7. "It is therefore axiomatic that because [] prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Because there is no constitutional right, federal courts "recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (*quoting Gaston v. Taylor*, 946 F.2d 340, 344

(4th Cir. 1991) (add'l internal quotations omitted)). The South Carolina Supreme Court has found that "[a]lthough this provision [§ 24-21-640] creates a liberty interest in parole eligibility, it does not create a liberty interest in parole." *Furtick v. South Carolina Dep't of Probation, Parole & Pardon Servs.*, 576 S.E.2d 146, 149 (S.C. 2002).

In South Carolina, an inmate has a right of review by the ALC after a final decision that he is ineligible for parole, but a parole-eligible inmate does not have the same right of review after a decision denying parole. In other words, Petitioner has failed to state a cause of action for relief because inmates have no protected right to parole, only the right to a parole hearing, which Petitioner has had some ten or eleven times. *Id.*. This distinction stems from the fact that parole is a privilege, not a right. *Sullivan v. South Carolina Dep't of Corr.*, 586 S.E.2d 124, 127 n.4 (S.C. 2003). A claim regarding the failure to grant parole, as opposed to a claim that an inmate has been declared permanently ineligible for parole, is not reviewable. *Id.* The ALC has jurisdiction to review parole matters only when they implicate a liberty interest, such as an ex post facto claim. *Steele v. Benjamin*, 606 S.E.2d 499, 503 (S.C. App. 2004).

Further, under the analysis of liberty interests set out by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), Petitioner has also failed to show that he has a liberty interest in parole or parole consideration. The application of the statute at issue constitutes neither a restraint on Petitioner's freedom "exceeding the sentence in such an unexpected manner as to give rise to protection of the Due Process Clause by its own force" nor a

restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Here, Petitioner received due process during his parole hearing. There has been no decision that Petitioner is parole ineligible, only that he has been denied parole at his biannual parole hearing. Even when the court has found that a parole statute establishes a liberty interest, it has held that inmates are entitled to no more than minimal procedure. At most, the courts have held that parole authorities must "furnish to the prisoner a statement of its reasons for denial of parole." *Franklin v. Shields*, 569 F.2d 784 (4th Cir. 1977); *see also Bloodgood v. Garraghty*, 783 F.2d 470, 473 (4th Cir. 1986). In sum, whether or not a liberty interest exists, federal courts must defer to state agencies applying state laws and thus their oversight of state parole proceedings has been extremely limited. *Vann v. Angelone*, 73 F.3d. at 522.

Accordingly, it appears that Petitioner's claims should be dismissed. Petitioner's claim that the ALC wrongfully granted a dismissal of his appeal and that his denial of parole contained reasons that were arbitrary and capricious likewise fails to state a ground for habeas relief. To the extent the district judge disagrees with this assessment, the undersigned provides a merits review.

      a)     Ground One

In Ground One, Petitioner argues that the failure to allow him to present his case before the full seven member Board is a denial of due process.

When the Petitioner appeared before the Parole Board on March 9, 2005, only five members were present, all of whom voted to deny Petitioner parole. Petitioner argues that by conducting this hearing with only five of its seven members present, the Parole Board acted without a quorum, thus violating his due process rights. Respondent submits there exist no due process rights associated with a parole hearing, and that conducting Petitioner's parole consideration hearing with only five Parole Board members could not constitute a violation of due process.

The South Carolina Code does not specify how many Parole Board members constitute a quorum and contains no specific requirement that the decisions of the Parole Board must be unanimous. Instead, it sets out the number of votes which must be cast in favor before a prisoner may be paroled. Respondent argues that in the absence of any statutory or other controlling provision, the common law rule that a majority of the whole board is necessary to constitute a quorum applies, and the board may do no valid act in the absence of a quorum. *In re Matthews*, 550 S.E.2d 311 (S.C. 2001); *Garris v. Governing Bd. of the State Reinsurance Facility*, 511 S.E.2d 48 (S.C. 1998). The Parole Board's own Operations Manual states: "A majority of the members of the Board constitutes a quorum for conducting business." (Operations Manual, Page 12). Despite the requirement that only a simple majority is required to conduct business, because of the statute requiring a two-thirds majority to authorize parole to persons convicted of a violent crime, the full Parole Board only hears parole cases when at least five members are present. In the case at bar, five of the

seven members heard Petitioner's case, which Respondent argues constitutes a quorum at common law, and all five voted to deny parole. Petitioner cannot show prejudice by the absence of the two absent Parole Board members, because even if they had voted in favor of parole, the vote would have been five to two and Petitioner would still have been rejected for parole. The court finds Petitioner has failed to show entitlement to relief on this ground, and recommends Ground One be dismissed.

        b)      Ground Two

In Ground Two, Petitioner argues that biannual appearances before the board is a violation of ex post facto law.

"An ex post facto violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime." *Jernigan v. State*, 531 S.E.2d 507, 509 (S.C. 2000). In *Jernigan*, the South Carolina Supreme Court held that the retroactive application of a state statute changing reviews for parole eligibility for violent offenders from annual to biannual constituted an ex post facto violation. *Id.* at 511–12. The court noted, "[t]he law existing at the time of the offense determines whether an increase of punishment constitutes an ex post facto violation." *Id.* at 509 n.3.

As there has been no change in the substance of the statute from the time when Petitioner committed his offense, there is no ex post facto issue present in this case.

At the time of the commission of Petitioner's crimes, South Carolina law allowed the Petitioner to appear before the Parole Board, but no law existed that determined the length

of time an inmate must wait until he is allowed to reappear before the board upon the denial of parole. In 1981, the South Carolina legislature created a law that allowed all inmates to have the ability to appear before the Board on a yearly basis. The 1986 omnibus crime bill created violent and non-violent classification of offenses, and bi-annual hearings for anyone serving an offense that is classified as violent. The Department subsequently created a policy that determined the waiting period of an inmate upon the denial of parole.

However, inmates who committed offenses prior to June 15, 1981, were not entitled to anything other than a single parole consideration hearing under the statutes in effect at that time. When Petitioner committed these offenses, Department policy held that after the denial of parole he was required to wait for two years before another hearing would be held. Because no law existed at the time Petitioner committed his offenses, pursuant to Department policy, he was to appear before the Board every two years.

After a careful review of the record, the undersigned concludes that Petitioner has failed to demonstrate that the state courts have unreasonably applied federal law in this case or unreasonably determined the facts. There is no violation of ex post facto law because Petitioner's eligibility for parole hearings was not implicated by the subsequent law. Therefore, Ground Two should be dismissed.

III.  Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry #41] be granted and Petitioner's motion for summary judgment [Entry #51] be denied.

IT IS SO RECOMMENDED.

*[signature]*

August 4, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**